IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERTO MARIN, TDCJ #919404, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-2718 |
| WILLIAM STEPHENS, et al., | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

State inmate Alberto Marin (TDCJ #919404) has filed a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that he has been denied adequate medical care while incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). Marin has also filed an Affidavit (Docket Entry No. 5) and a Statement of Fact (Docket Entry No. 19) to supplement his claims. Defendants Stephanie Abron, Robert Friedman, Jerry Palacio, and James Stubbs have filed a Motion for Summary Judgment ("Defendants' Motion") (Docket Entry No. 35). Marin has not filed a response or requested an extension and his time to do so has expired. After reviewing all of the pleadings, exhibits, and the applicable law, the Defendants' Motion will be granted and this case will be dismissed for the reasons explained below.

## I. Background

Marin is a 52-year-old inmate who has been diagnosed with high cholesterol, type 2 diabetes, major depressive disorder with psychosis, acid reflux, obesity, hypothyroidism, low back pain, and lymphedema in his lower left leg.[1] The defendants are two physicians (Dr. Stephanie Abron and Dr. Robert Friedman) and two physical therapists (Jerry Palacio and James Stubbs) employed by TDCJ at the Jester III Unit[2] where Marin was confined when he filed his Complaint.[3]

Marin alleges that the defendants denied him adequate medical care for lymphedema, which he developed after having surgery to repair a torn meniscus in his left knee.[4] Lymphedema is described as a collection of fluid that causes swelling in the extremities when lymph vessels are unable to drain fluid.[5] There is no cure

---

[1] Affidavit of Steven Bowers, M.D. ("Bowers Affidavit"), Exhibit A to Defendants' Motion, Docket Entry No. 35-1, p. 3.

[2] Complaint, Docket Entry No. 1, pp. 4-5. The Jester III facility is described as a "medical unit" that features "24-hour medical care, seven days a week, and specialty clinics such as brace and limb, occupational therapy, and physical therapy." Defendants Abron, Friedman, Palacio and Stubbs' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), Docket Entry No. 24, p. 5, n.3. The Jester III Unit also houses the Assistive Disability Services ("ADS") program. Id.

[3] Complaint, Docket Entry No. 1, pp. 1, 4. On August 18, 2017. Marin was transferred to the Holliday Unit in Huntsville where he remains in custody. See Advisory, Docket Entry No. 37, p. 1.

[4] Bowers Affidavit, Exhibit A to Defendants' Motion, Docket Entry No. 35-1, p. 3.

[5] Id. at 3-4.

for lymphedema, but the condition can be managed with compression garments, wrapping the affected arm or leg, and exercise.[6] In cases of severe lymphedema surgery to remove excess tissue may be an option.[7]

Marin alleges that Dr. Abron, who is Director of the TDCJ Assistive Disability Services ("ADS") program,[8] ignored "orders" from other physicians to give Marin a wheelchair.[9] Marin contends that he needs a wheelchair because he has fallen and hurt himself "on numerous occasions" while attempting to use crutches or a walker.[10] Marin states that he has complained to Dr. Friedman "numerous times," requesting a wheelchair and treatment, but that Dr. Friedman has not issued him a pass or referred him to a specialist.[11] Marin alleges further that Palacio and Stubbs unreasonably forced him to walk during physical therapy, causing him "obvious discomfort" and "extreme pain."[12]

Marin contends that he needs a permanent wheelchair pass because he "literally cannot walk" or apply pressure to his leg,

---

[6] Id. at 4.

[7] Id.

[8] Motion for Leave to File an Amended Complaint, Docket Entry No. 27, p. 1.

[9] Statement of Fact, Docket Entry No. 19, p. 4 ¶ 8(c).

[10] Id. at 3-4 ¶ 5(d).

[11] Id. at 4-5 ¶ 8(d).

[12] Id. at 5 ¶¶ 8(G)&(H).

which he describes as extremely swollen.[13] Alleging that the defendants have acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment, Marin seeks injunctive relief in the form of a permanent wheelchair pass and monetary damages in the amount of $300,000.00 for the violation of his constitutional rights.[14] The defendants now move for summary judgment, arguing that they have not denied Marin adequate care with deliberate indifference and that they are entitled to qualified immunity from his claims.[15]

## II. Standard of Review

The Defendants' Motion is governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is

---

[13]Id. at 4 ¶¶ 6 and 5.

[14]Complaint, Docket Entry No. 1, p. 6.

[15]The court previously dismissed claims concerning the denial of adequate medical care before August of 2014 as barred by the applicable statute of limitations, and Marin's claims for monetary damages from the defendants in their official capacity as barred by the Eleventh Amendment. See Memorandum Opinion and Order dated April 20, 2017, Docket Entry No. 30, p. 16. Claims against several other defendants (former TDCJ Director William Stephens, Warden Troy Simson, Practice Manager Susan Dostal, Nurse Manager Marisol Gemin, and Security Officer Aremus) were dismissed on November 22, 2016. See Order to Answer and Order of Partial Dismissal, Docket Entry No. 20, pp. 4-5.

"material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted). However, the non-movant "cannot rest on [his] pleadings" where qualified immunity is asserted. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in original). Nor can the non-movant avoid summary judgment simply by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County,

Texas, 866 F.3d 274, 279 (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The plaintiff represents himself in this case. Courts construe pleadings filed by pro se litigants under a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (citation omitted). Nevertheless, "pro se parties must still brief the issues and reasonably comply with [federal procedural rules]." Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995). The Fifth Circuit has held that "[t]he notice afforded by the Rules of Civil Procedure and the local rules" is "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. See Martin v. Harrison County Jail, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam).

### III. Discussion

#### A. The Defendants are Entitled to Qualified Immunity

The defendants move for summary judgment on the claims for monetary damages against them in their individual or personal capacity.[16] Public officials acting within the scope of their

---

[16]Defendants' Motion, Docket Entry No. 35, pp. 8-9.

authority generally are shielded from civil liability by the doctrine of qualified immunity. See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).

Where a defendant asserts qualified immunity on summary judgment "the burden shifts to the plaintiff to rebut it." Cousin v. Small, 325 F.3d 627, 632 (5th Cir. 2003) (citations omitted) (emphasis in original). Thus, the plaintiff bears the burden of negating the defendants' claim of qualified immunity. See Bazan, 246 F.3d at 489-90. To avoid summary judgment a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them." Lampkin v. City of Nacogdoches, 7 F.3d 430, 435 (5th Cir. 1993); see also Bazan, 246 F.3d at 490 (observing that a plaintiff may not rest on the pleadings, but "must show genuine issues of material fact concerning the reasonableness of [the defendants'] conduct").

The defendants argue that they are entitled to qualified immunity because Marin cannot show that they acted with the requisite deliberate indifference to a serious medical need in violation of the Eighth Amendment, which prohibits cruel and unusual punishment. See Estelle v. Gamble, 97 S. Ct. 285, 291 (1976). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain." Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (internal quotation marks and citation omitted). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official acts with deliberate indifference only if he knows that an inmate faces a substantial risk of serious harm and disregards that risk. Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted). A showing of deliberate indifference requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any

-8-

serious medical needs." Id. (internal quotation marks and citation omitted).

The defendants have provided an Affidavit from Dr. Steven Bowers, who summarizes the care that Marin has received, and approximately 200 pages of medical records in support of their contention that Marin was not denied medical care in violation of the Eighth Amendment.[17] Marin, who has not filed a response to the summary judgment motion, fails to show that the individual defendants violated his rights under the Eighth Amendment or to overcome the defendants' entitlement to qualified immunity for reasons outlined separately below.

1. Claims Against Dr. Abron

Marin claims that Dr. Abron denied him a wheelchair despite the fact that other medical providers recommended that he have one.[18] The defendants note, however, that there is no record showing that Dr. Abron ever personally treated Marin or that she was involved in any decision to deny him a wheelchair.[19] "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

---

[17]Bowers Affidavit, Exhibit A to Defendants' Motion, Docket Entry No. 35-1, pp. 2-8; Medical Records, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2 (76 pages); Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3 (77 pages); Exhibit B-3 to Defendants' Motion, Docket Entry No. 35-4 (77 pages); and Exhibit B-4 to Defendants' Motion, Docket Entry No. 35-5 (4 pages).

[18]Statement of Fact, Docket Entry No. 19, p. 4.

[19]Defendants' Motion, Docket Entry No. 35, p. 8.

Because there is no evidence in the record showing that Dr. Abron had any personal involvement with Marin's medical care, she is entitled to qualified immunity and the claims against her must be dismissed.

2. <u>Claims Against Dr. Friedman</u>

Marin claims that he asked Dr. Friedman numerous times for a wheelchair or referral to a specialist, but that Dr. Friedman did nothing to help.[20] The medical records refute Marin's claim.

The medical records show that Marin received treatment from numerous providers at the Jester III Unit and other facilities, and that Dr. Friedman treated Marin on at least 13 occasions during the period relevant to this lawsuit.[21] Dr. Friedman saw Marin initially on February 9, 2015, and issued him a prescription for Ibuprofen.[22] On the same day Marin had a consultation with a pharmacist about his condition and medication regimen, which Dr. Friedman approved.[23] Less than two weeks later, on February 20, 2015, Dr. Friedman issued a wheelchair pass for Marin for a term of six months.[24]

---

[20]Statement of Fact, Docket Entry No. 19, pp. 4-5.

[21]Bowers Affidavit, Exhibit A to Defendants' Motion, Docket Entry No. 35-1, pp. 5-7 (summarizing the record of care provided by Dr. Friedman).

[22]Prescription, Exhibit B-3 to Defendants' Motion, Docket Entry No. 35-4, p. 6.

[23]Correctional Managed Care ("CMC") Department of Pharmacy - Pharmacotherapy Clinic Note, Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3, pp. 68-73.

[24]CMC MD/MLP - Sick Call Exam, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, p. 72.

On May 19, 2015, Dr. Kokila Naik (who is not a defendant) evaluated Marin and determined that he did not need a wheelchair.[25] Dr. Naik prescribed physical therapy for a period of a week to ten days.[26]

On June 29, 2015, Dr. Friedman submitted an expedited referral on Marin's behalf, asking for an updated opinion from the "physical medicine" department about Marin's continued need for a wheelchair.[27] In response to a sick-call request on July 14, 2015, Dr. Friedman also submitted a referral for Marin to be evaluated by a vascular surgeon at the University of Texas Medical Branch ("UTMB") John Sealy Hospital in Galveston.[28]

The physical medicine department discontinued Marin's wheelchair pass on July 22, 2015, on instructions from Dr. Naik, who accused Marin of "staging falls" and failing to cooperate in physical therapy.[29] On July 27, 2015, Dr. Friedman prescribed antibiotics to treat a wound on Marin's upper left leg.[30] Noting

---

[25]UTMB Managed Care Physician Clinic Notes, Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3, p. 18.

[26]Id.

[27]CMC MD/MLP - Sick Call Exam, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, p. 64.

[28]CMC MD/MLP - Sick Call Exam, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, p. 60.

[29]UTMB Managed Care Physician Clinic Notes, Exhibit B-3 to Defendants' Motion, Docket Entry No. 35-4, p. 8.

[30]CMC Provider Chronic Clinic Note, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, pp. 21-22.

that Marin was having trouble ambulating to his appointments, Dr. Friedman contacted Dr. Naik to voice his concern.[31]

As requested by Dr. Friedman, Marin was evaluated by a vascular specialist at the UTMB Hospital in Galveston on October 7, 2015.[32] Noting that Marin was ambulatory, the doctor diagnosed chronic lymphedema of the lower left leg, prescribed compression garments, and scheduled a follow-up visit in six months.[33]

On November 6, 2015, Dr. Friedman noted that Marin was running a high temperature and gave orders for him to be taken to a local hospital,[34] where he was diagnosed with sepsis.[35] Marin remained in the hospital for several days before returning to the Jester III Unit.[36]

Dr. Friedman next saw Marin on February 2, 2016,[37] when he authorized a wheelchair pass for 180 days.[38] Dr. Friedman treated

---

[31]Email from Dr. Friedman to Dr. Kokila Naik, Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3, p. 14.

[32]UTMB Health Vascular Clinic Note, Exhibit B-3 to Defendants' Motion, Docket Entry No. 35-4, pp. 51-55.

[33]Id. at 53.

[34]CMC Urgent/Emergent Care Record, Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3, pp. 25-30.

[35]Bowers Affidavit, Exhibit A to Defendants' Motion, Docket Entry No. 35-1, p. 6.

[36]CMC MC/MLP Chart Review, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, p. 52.

[37]CMC Clinic Notes, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, pp. 46-50.

[38]Offender Medical Pass, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, p. 6.

Marin again on March 12 and March 14, 2016, continuing his prescription for antibiotics and pain medication.[39]

On March 23, 2016, Marin was seen for a follow-up appointment with a vascular specialist at the UTMB Hospital in Galveston.[40] The assessment was chronic lymphedema of the lower left extremity.[41] The plan of care recommended by the specialist was for Marin to continue wearing a compression stocking during the day, with access to extra pillows so that he could elevate the leg while in his bunk, and for the medical department to issue a wheelchair that allows for elevation of the lower left extremity.[42]

Dr. Friedman ordered treatment for Marin again on July 11, 2016, and on August 30, 2016, when he renewed Marin's wheelchair pass for an additional 90 days.[43] Dr. Friedman renewed Marin's wheelchair pass for another 180 days on December 8, 2016.[44] Shortly

---

[39]CMC Clinic Notes, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, pp. 41-45; Prescriptions, Exhibit B-3 to Defendants' Motion, Docket Entry No. 35-4, p. 3.

[40]UTMB Health Records, Exhibit B-3 to Defendants' Motion, Docket Entry No. 35-4, p. 44.

[41]Id. at 44, 45.

[42]Id. at 47.

[43]CMC Clinic Notes, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, pp. 33-37, 38-40; CMC Clinic Notes, Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3, p. 5.

[44]CMC Clinic Notes, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, pp. 32, 76.

thereafter, on December 13, 2016, Dr. Friedman issued Marin a prescription for Ibuprofen for pain.[45]

The record shows that Dr. Friedman consistently renewed wheelchair passes for Marin and that, contrary to Marin's claims, he did not refuse to refer him to a specialist. Absent evidence that Dr. Friedman refused to treat him, ignored his complaints, or otherwise evinced a wanton disregard for his condition, Marin fails to show that Dr. Friedman acted with deliberate indifference to his serious medical needs or violated his rights under the Eighth Amendment. See Gobert, 463 F.3d at 346. Therefore, Dr. Friedman is entitled to qualified immunity and the claims against him will be dismissed.

### 3. Claims Against Palacio and Stubbs

Marin claims that Palacio and Stubbs unreasonably forced him to walk during physical therapy, which caused him to suffer extreme pain and discomfort.[46] As noted above, the medical records show that Marin was referred for physical therapy by Dr. Naik in mid-May of 2015 because she did not believe that he needed a wheelchair.[47]

---

[45] Prescription, Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3, p. 74.

[46] Statement of Fact, Docket Entry No. 19, pp. 2, 5.

[47] UTMB Managed Care Physician Clinic Notes, Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3, p. 18.

Dr. Naik prescribed physical therapy to wean Marin from his wheelchair over a period of a week to ten days.[48]

Clinical notes show that Marin was assigned to perform "gait training" with a rolling walker as part of a "weaning program."[49] Marin was discharged from physical therapy on July 21, 2015, for "staging a fall" and refusing to cooperate.[50]

Dr. Bowers notes that Palacio and Stubbs, as physical therapists, were simply following orders given by a physician to wean Marin from his wheelchair by having him attempt to walk without one.[51] Dr. Bowers explains that physical therapy often requires patients to "push themselves physically and to perform movements that are outside the patient's normal level of comfort."[52] As a result, "[i]t is common for patients going through physical therapy to experience pain during the reconditioning process."[53]

The record does not contain evidence showing that Marin was injured as the result of his physical therapy regimen or that he requested any treatment for pain during that time. Marin does not

---

[48] Id.

[49] CMC Physical Therapy Clinic Note, Exhibit B-3 to Defendants' Motion, Docket Entry No. 35-4, p. 10.

[50] Id. at 10, 11.

[51] Bowers Affidavit, Exhibit A to Defendants' Motion, Docket Entry No. 35-1, p. 4.

[52] Id.

[53] Id.

otherwise show that Palacio or Stubbs forced him to perform physical therapy in a manner that failed to comply with the prescribing physician's orders or that their actions were objectively unreasonable. Both Palacio and Stubbs are therefore entitled to qualified immunity, and the claims against them will be dismissed.

## B. Marin is Not Entitled to Injunctive Relief

Marin has asked for injunctive relief in the form of a permanent wheelchair pass.[54] Marin has not shown, however, that any of the defendants in this case were responsible for denying him a wheelchair. The available medical records reflect, moreover, that Marin's temporary wheelchair passes have been repeatedly renewed by Dr. Friedman,[55] consistent with the recommendation of specialists at UTMB.[56] Because Marin does not demonstrate an ongoing constitutional violation that is attributable to the defendants, he does not demonstrate that injunctive relief is warranted. See, e.g., Virginia Office for Protection and Advocacy v. Stewart, 131 S. Ct. 1632, 1639 (2011) (noting that prospective relief requires

---

[54]Complaint, Docket Entry No. 1, p. 6.

[55]Offender Medical Pass, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, p. 6; CMC Clinic Notes, Exhibit B-2 to Defendants' Motion, Docket Entry No. 35-3, p. 5; CMC Clinic Notes, Exhibit B-1 to Defendants' Motion, Docket Entry No. 35-2, pp. 32, 76.

[56]UTMB Health Records, Exhibit B-3 to Defendants' Motion, Docket Entry No. 35-4, p. 47.

an ongoing violation of federal law); <u>NiGen Biotech, L.L.C. v. Paxton</u>, 804 F.3d 389, 394 (5th Cir. 2015) (explaining that a suit for prospective, injunctive relief against a state actor is barred by the Eleventh Amendment unless an ongoing violation of the federal constitution is demonstrated). Accordingly, the defendants are entitled to summary judgment on this issue, and the action will be dismissed.

### IV.  Conclusion

Based on the foregoing, the court **ORDERS** as follows:

1. Defendants Abron, Friedman, Palacio and Stubbs' Motion for Summary Judgment (Docket Entry No. 35) is **GRANTED**.

2. This action will be dismissed with prejudice.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 27th day of October, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE